**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | § | |
| *Plaintiff*, | § | CIVIL ACTION 2:22-cv-0351-RWS-RSP |
| | § | |
| v. | § | |
| | § | |
| SZ DJI TECHNOLOGY CO., LTD., DJI | § | |
| EUROPE B.V., SZ DJI BAIWANG | § | |
| TECHNOLOGY CO. LTD., and | § | |
| IFLIGHT TECHNOLOGY COMPANY | § | |
| LTD. | | |
| *Defendants.* | | |

## JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

Plaintiff Textron Innovations Inc. ("TII") and Defendants SZ DJI Technology Co., Ltd.,

DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., and iFlight Technology Company Ltd.

("DJI") (collectively, the "Parties") jointly move the Court to adopt a protective order in this case.

TII's proposed protective order is attached as Exhibit A.  Ex. A (TII's Proposed Protective Order).

DJI's proposed protective order is attached as Exhibit B.  Ex. B (DJI's Proposed Protective Order).

A redline comparison between DJI's proposal and the Court's model protective order is attached

as Exhibit C.  Ex. C (showing the differences between DJI's proposal and the model order).  The

parties' positions are below.

**TII's Position:**

TII proposes that the Court adopt its model protective order with no changes.  Ex. A.  The

model protective order provides Textron's counsel with access to relevant evidence of

infringement, while providing DJI's source code with significant protections.  The model

protective order has worked for many cases, and there is no reason to deviate from the model here.

DJI, in contrast, proposes adding unprecedented restrictions to the model protective order's

source code provisions.   As the party seeking those restrictions, DJI bears the burden of demonstrating that good cause exists.  *EON Corp. IP Hldgs., LLC v. Landis+Gyr Inc.*, No. 6:11-cv-00317-LED-JDL, Dkt. No. 154 at 3 (E.D. Tex. June 12, 2012) ("When parties to an action agree on entry of a protective order but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating that 'good cause' exists for the protection of that information."). DJI has not met its burden of showing good cause for any of its proposed restrictions, and each should be rejected.  In the interest of efficiency, TII focuses on the most problematic provision below.

*DJI's "RESTRICTED CONFIDENTIAL – CHINA REGULATED SOURCE CODE" Provisions (Paragraphs 13(a)-(c), 16):*

DJI proposes adding the above designation for its source code and the following set of "additional restrictions" that apply to the code:

a.  The stand-alone computer(s) as set forth in paragraph 12(a) may **only be located at offices designated by the producing Party in Chinese mainland**;[1]

b.  Access to Protected Material designated RESTRICTED CONFIDENTIAL - CHINA REGULATED SOURCE CODE shall be limited to outside counsel and up to two (2) outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity). The outside counsel, consultants or experts **shall be Chinese nationals lawfully admitted for permanent residence in Chinese mainland**, and retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above;

c.  **Before printing, copying, or transmitting any portion of Source Code Material, the receiving Party shall obtain license or permission from competent Chinese government or agencies to allow the export of such material to the United States**. After such license or permission is obtained, the producing Party shall provide such material to the receiving Party in accordance with relevant China laws and regulations and this protective order.[2]

---

[1] All emphasis added unless otherwise noted.

[2] After the parties met and conferred and TII provided its position on DJI's proposed additions to the protective order—including DJI's attempt to shift the burden to TII to request the license to

Ex. B at ¶ 13(a)-(c); *see also* ¶ 16 (applying restrictions to all designated material).

These restrictions should not be adopted for at least three reasons.  First, DJI's restrictions are unduly burdensome and impractical.  DJI's restrictions would (a) limit review of DJI's source code only to Chinese nationals—which would likely exclude all of plaintiff's lawyers and experts; (b) restrict the source code review computer to China—which would require travel to China for anyone that qualifies to review the code; and (c) require plaintiff to negotiate with the Chinese government to get the code out of China—which would improperly shift the burden of such negotiations from DJI (a Chinese entity) to Textron (a U.S. government contractor), making it highly unlikely China would ever agree with Textron.  In fact, DJI's own Chinese law expert in the parties' recently-concluded case in the Western District of Texas declared that it is DJI's burden to negotiate with the Chinese government by submitting an export application: "The Application Form requires the *exporter (i.e., DJI)* to prepare not only general information regarding the exporter itself . . . Except for the Application Form, the exporter should also prepare other technical documentations and explanation materials for the technical review . . ."  Ex. D (DJI counsel's declaration) at ¶ 20.

Second, DJI's restrictions would elevate Chinese law over the U.S. discovery laws that apply in this case—effectively allowing DJI to avoid providing relevant evidence of infringement to Textron.[3]  There is no dispute that DJI's source code is relevant, and DJI is obligated to produce

---

export restricted source code from China—DJI claimed that its proposal that TII file for and obtain a license, instead of DJI, was a "typo."  Yet, DJI's most recent correspondence to TII proves otherwise.  *See* Ex. F (4-28-2023 Correspondence); Ex. G (5/15/2023 Correspondence from Jeff Becker to Marc Weinstein).  In any event, DJI's correction of its "typo" does not remedy the numerous other problems with DJI's proposals.

[3] DJI's proposed provisions go so far as to attempt to shield all of its technical documents located in China from production, and even asks this Court to expressly subject TII to Chinese law.  *See, e.g.*, Ex. B, paragraph 16.

that code under the Court's Discovery Order and Patent Local Rules.  But, by requiring Textron to obtain permission from the Chinese government to print or transmit relevant code, DJI attempts to shield its code from production under Chinese export laws.  Even if DJI contends a Chinese export law applies to its code, DJI has chosen to do business in the United States and must comply with U.S. discovery laws.  *See In re Valsartan, Losartan, and Irbesartan Prods. Liability Litig.*, MDL No. 2875 (RBK), 2021 WL 6010575, at *18 (D.N.J. Dec. 20, 2021) ("Even though between a 'legal rock and hard place', PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes.  As one judge's decision has implied, if you don't like the rules, then stop doing business in the U.S.  Any expectation that a PRC law will successfully shield discovery in a U.S. litigation needs a tempering of realism."); *Arigna Technology Limited v. Nissan Motor Company, Ltd., et al.*, Case No. 2:22-cv-00126-JRG-RSP, 2022 WL 3020136, at *1 (E.D. Tex. July 29, 2022) ("foreign law 'do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [foreign law]'") (internal citations omitted).  DJI thus cannot invoke Chinese law in this Court to avoid producing its code in the United States.

Third, DJI's restrictions are unprecedented.  DJI has not cited a single case adopting a similar set of restrictions.  To the contrary, this Court has adopted protective orders in cases involving Chinese defendants like DJI that do not have DJI's restrictions.  For example, the Court adopted a protective order in *Fitistics, LLC v. Huawei Device Co., Ltd.*, No. 2:23-cv-00008-JRG-RSP, Dkt. No. 30 (E.D. Tex. Apr. 5, 2023) that did not include restrictions like DJI seeks here even though defendant Huawei Device Co., Ltd. was a Chinese defendant.  As another example, DJI itself did not seek any similar restrictions on code when the parties negotiated their protective order in their recently-concluded Western District of Texas case.  Ex. E at ¶ 13(a)-(l).  Similarly,

the Court has rejected attempts to insert export control limitations into the protective order and should do the same here.  *See, e.g.*, *EON Corp.*, No. 6:11-cv-00317-LED-JDL, Dkt. No. 154 at 3-4; *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, No. 4:18-cv-00474, Dkt. No. 99 at 1-2 (E.D. Tex. Apr. 17, 2019).

Each of DJI's arguments for this provision should be rejected. DJI argues that "DJI must comply with China's export control laws" to "fulfill its discovery obligations regarding source code based in China."  But, as explained above, DJI cannot use China's laws as a shield against U.S. discovery.  This action is for patent infringement in the United States—where DJI has elected to do business—and Chinese export control laws do not take precedent over U.S. discovery laws. *Arigna Technology*, Case No. 2:22-cv-00126-JRG-RSP, 2022 WL 3020136, at *1.  Holding otherwise will impose severe burdens on Textron (e.g., hiring Chinese nationals to review DJI's code in China, precluding the transmission of anything about the code outside of China, etc.) and limit Textron's ability to obtain relevant evidence of DJI's infringement.  Textron is unaware of a single instance where this Court has imposed such severe restrictions on a plaintiff or the ability to marshal evidence.

DJI argues that the restrictions are important to its application to export the code for submission to the Chinese government.  But DJI's own prior application to export its code in the parties' prior Western District of Texas action undermines this argument.  *Nowhere* in DJI's prior application did DJI inform the Chinese government that a protective order was in place in the Western District.  And DJI never even requested similar restrictions on source code in the protective order there.  If these provisions were so important to getting DJI's application granted, then why did DJI omit them from the protective order there and not even tell the Chinese government about the existence of a protective order?  DJI submits no evidence that the Chinese

government would have found this Court's model protective order insufficient, and its argument that the Chinese government would insist on DJI's proposed changes amounts to nothing more than rank speculation.  Speculating that the Chinese government might permit DJI's source code export is no basis for this Court to impose severe and burdensome restrictions nor to relieve DJI of its discovery obligations under U.S. law.

DJI's argument that "DJI will file an export application" misstates the onerous obligations of its proposed protective order.  Contrary to DJI's argument, DJI's protective order requires Textron to file an application with the Chinese government to obtain an export license: "Before printing, copying, or transmitting any portion of Source Code Material, *the receiving Party* shall obtain license or permission from competent Chinese government or agencies to allow the export of such material to the United States."  The "receiving Party" in that proposal is Textron, not DJI, and Textron should not be the one filing an application or obtaining a license.  That burden is on DJI as the owner of the code.

DJI's argument that it has been "working diligently for months to propose a procedure to maximize the likelihood that an export license is granted" is concerning.  In the parties' Western District action, the court sanctioned DJI for disregarding the court's order to take all steps necessary to get its code out of China for *eleven* months.  *See Textron Innovations Inc. v. SZ DJI Technology Co., Ltd. et al.*, Case No. 6:21-cv-00740-ADA, Dkt. No. 127 at 3-4 (W.D. Tex. Dec. 28, 2022); *id.* at Dkt. No. 134, Text Description of Docket Entry (denying DJI's appeal of Sealed Discovery Order (Dkt. No. 108)).  Here, DJI has long known of the accused technology because Textron attached infringement charts to its Complaint.  Dkt. No. 1 at Exhibits E-1 – E-4.  Yet, DJI does not appear to have taken any steps to prepare or submit that application.  This case is on a rapid schedule, and DJI's failure to timely submit its export application has prejudiced and will

continue to prejudice Textron's ability to obtain relevant evidence of infringement.  Rather than take steps to submit an export application, DJI now is attempting to shield its code from discovery in this case through its protective order restrictions.  The Court should reject DJI's attempt to rely on Chinese law to shield its code and instead hold DJI to U.S. discovery laws by adopting the Court's model protective order.

*DJI's Additional Source Provisions (Paragraph 12):*

Finally, DJI fails to even provide a reason for many of its proposals.  For example, aside from its onerous export control provisions, DJI seeks other one-sided source code provisions, including a procedure that gives DJI sole discretion to refuse to produce source code printouts (Ex. B, para. 12(i)); places unwarranted restrictions on reviewer's note-taking ability (Ex. B, para. 12(j)); sets a presumptive limit on source code printouts (Ex. B, para. 12(h); adds encryption requirements to electronic copies of code (Ex. B, para. 12(l)); and removes the provision permitting use of source code at Court or during depositions (Ex. B, para. 12(l)).  DJI has failed to meet its burden with respect to any of these changes aside from the vague and unsupported assertion that they will somehow assist DJI in obtaining a Chinese export control license.

**DJI's Position:**

For DJI to fulfill its discovery obligations regarding source code based in China, DJI must comply with China's export control laws.  The Ministry of Commerce of China and the Ministry of Science and Technology of China have promulgated regulations in accordance with China's export control laws that include a Catalog listing technologies that are subject to export prohibitions or subject to restrictions needing an export license.  Any person or entity exporting a restricted technology without a license subjects the exporter to severe administrative and/or criminal penalties under Chinese law.  DJI has a good faith belief that at least some relevant source

code, such as source code relating to flight control systems, is likely to be technology identified by the Catalog as restricted, such that an export license from the Department of Commerce of Guangdong Province ("GDDOC") will likely be required to enable DJI to produce such source code in this proceeding.

Since, as Textron itself notes, these technology export restrictions impacted production of source code in the litigation between the parties in the Western District of Texas, DJI has been working diligently for months to propose a procedure to maximize the likelihood that an export license is granted so that the situation does not recur and DJI is able to produce relevant source code in this litigation in the Eastern District of Texas.  This procedure includes:

(a)  Textron sends an attorney and/or expert (collectively "Consultant") having both Chinese nationality and lawful permanent residence in the Chinese mainland to review source code on one or more stand-alone computers located in Shenzhen, China;

(b)  The Consultant and DJI work together to identify certain lines of source codes that are requested by the Consultant on behalf of Textron for export and that may implicate export restrictions ("Code Lines");

(c)  After the Code Lines are identified, DJI will file an export application along with any other required materials to GDDOC;

(d)  GDDOC will examine the application under the governing regulations to decide whether to issue a Technology Export License;

(e)  If GDDOC issues the Technology Export License, DJI will produce the Code Lines in accordance with the Technology Export License and any applicable protective order in the EDTX Proceedings.

A significant component of the export application includes the Protective Order that will be entered

in these proceedings.  For the GDDOC to issue the Technology Export License, the Protective Order needs to have strong and specific restrictions on the availability and use of any source code produced from China.  DJI's proposed Protective Order, attached hereto as Exhibit "B," includes provisions specifically addressing these necessary restrictions on the availability and use of China-based source code.  Counsel for DJI has previously detailed the reasons these provisions need to be added to the Court's Protective Order in two letters sent in April to Textron, and DJI will be making the Protective Order a component of the export application it (***not Textron***) submits to the GDDOC.  However, Textron's proposed Protective Order rejects all of the provisions DJI has added to address the restrictions on production of China-based source code.

To avoid precisely a situation like the one that arose in the Western District of Texas case, DJI is thus seeking to make all possible efforts to comply with U.S. discovery requirements by carefully crafting the Protective Order in a manner that balances closely following this Court's model protective order with implementing protections that will maximize the likelihood of approval of the export application by Chinese authorities.  In contrast, Textron, while arguing that Chinese companies should comply with U.S. discovery, actively seeks to prevent DJI from implementing measures, such as the reasonable Protective Order modifications, that will maximize the likelihood of obtaining permission from China to export the source code at issue.  Textron's actions are a transparent attempt to secure a thumb-on-the-scale procedural advantage through gamesmanship to avoid litigating the case on the merits.  It actively seeks to place DJI in the avoidable "legal rock and hard place" so it can preclude DJI from being able to provide the source code discovery, so that Textron can then argue, as it did in the Western District of Texas case, for an adverse inference *in lieu* of the production of source code likely to undermine Textron's infringement allegations.  To avoid such an unfair result, the Court should adopt DJI's proposed

Protective Order.

Dated:  May 15, 2023                    Respectfully submitted,

/s/ *Jeffery S. Becker*
Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue,
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Kevin J. Meek
Texas Bar No. 13899600
**McDermott Will & Emery LLP**
303 Colorado Street, Suite 2200
Austin, TX 78701
Telephone: (512) 726-2575
Facsimile: (972) 920-3157
kmeek@mwe.com

Mark Speegle
Texas Bar No. 24117198
Boyang Zhang (*pro hac vice*)
Texas Bar No. 24125473
**Baker Botts L.L.P.**
401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-2501
mark.speegle@bakerbotts.com
boyang.zhang@bakerbotts.com

Kurt Pankratz
Texas Bar No. 24013291
Jeffery S. Becker
Texas Bar. No. 2406935
Harrison Rich
Texas Bar No. 24083730
Morgan Mayne
Texas Bar No. 24084387
Caroline Duncan (*pro hac vice*)
Texas Bar No. 24108811

**Baker Botts L.L.P.**
2001 Ross Avenue
Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
kurt.pankratz@bakerbotts.com
jeff.becker@bakerbotts.com
harrison.rich@bakerbotts.com
morgan.mayne@bakerbotts.com
caroline.duncan@bakerbotts.com

*ATTORNEYS FOR PLAINTIFF*
*TEXTRON INNOVATIONS INC.*


/s/ *Kenneth R. Adamo*
Kenneth R. Adamo
Texas State Bar No. 00846960
Marc Weinstein (*Pro Hac Vice*)
Virginia Bar No. 44645
Scott Daniels (*Pro Hac Vice*)
District of Columbia Bar No. 939447
Mao Wang (*Pro Hac Vice*)
Virginia Bar No. 88074
**XSENSUS, LLP**
100 Daingerfield Road, Suite 402
Alexandria VA 22314
Tel: 571-376-6333
kenneth@kradamo.com
marc.weinstein@xsensus.com
scott.daniels@xsensus.com
john.wang@xsensus.com


Thomas E. Bejin *(Pro Hac Vice)*
Michigan Bar No. P56854
**BEJIN BIENEMAN PLC**
2000 Town Center, Suite 800
Southfield, Michigan 48075
Tel: (313) 528-4882
Fax: (313) 528-6923
bejin@b2iplaw.com


Andy Tindel
Texas Bar No. 20054500
**MT2 LAW GROUP**
**MANN | TINDEL | THOMPSON**

112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
atindel@andytindel.com

***ATTORNEYS FOR DEFENDANTS***

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that this is a joint motion.

*/s/ Jeffery S. Becker*
Jeffery S. Becker

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.

*/s/ Jeffery S. Becker*
Jeffery S. Becker
