**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

TEXTRON INNOVATIONS INC.,

Plaintiff,

v.

SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., SZ DJI BAIWANG TECHNOLOGY CO. LTD., AND IFLIGHT TECHNOLOGY COMPANY LTD.

Defendants.

Case No.: 2:22-CV-00351-RWS-RSP

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**
**UNDER FED. R. CIV. P. 26(C)**

Plaintiff Textron Innovations Inc. ("TII") has sued Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., iFlight Technology Company Ltd. (collectively, "DJI"), for patent infringement. TII, who is neither a manufacturer nor seller of any drones, has erroneously accused DJI of manufacturing and selling drones that infringe TII's patents. This lawsuit follows a patent suit TII brought against DJI in the Western District of Texas (*Textron* v. *DJI*, 6:21-cv- 00740-ADA) ("Western District Case").

Pursuant to P.R. 3-4(a), DJI is required to produce or make available for inspection today "source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of" the products TII has accused of infringement. DJI will comply with P.R. 3-4(a) to the best of its ability, producing documents, devices and the majority of the source code for the accused products.



[redacted] means that under the Federal Rules, [redacted] *See* Fed. R. Civ. P. 34 ("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [] items in the responding party's possession, custody, or control"); (*see also* Ren Declaration ¶¶ 6-11.). DJI therefore and hereby seeks a protective order [redacted] DJI sought consent for this relief from TII and TII has refused. (*See* Nyarady Declaration ¶17.)

Throughout the dialogue on this topic, TII's counsel has improperly relied on the facts and judgments reached in the Western District Case to advance its positions in the instant action. (*See* Nyarady Declaration ¶ 11.) But TII is wrong. This case is not the same as the case brought in the Western District: the patents are different, the facts are different, the proof at trial will be different, counsel for DJI are different, and therefore the judgments reached by this Court should also be different.

In the Western District Case, TII sought and obtained sanctions against DJI relating to production of source code. (Western District Case D.I. 108, 134). TII is positioning this case as a repeat of that one and attempting to position DJI as an unwilling participant in the discovery process governed by the Federal Rules of Civil Procedure. But here, in the Eastern District

litigation, DJI has informed TII that

## INTRODUCTION

Under Patent Rule 3-4(a) of the Eastern District of Texas, DJI is required to produce source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an accused product. Patent Rule 3–4(a). Consistent with that obligation, and in accordance with this Court's May 11, 2023 Docket Control Order, DJI intends to produce

During a Zoom conference on May 23, 2023, TII's counsel evinced a clear awareness and understanding of In fact, when told that

1

[redacted]

[redacted] TII's counsel refused on the basis that [redacted] (*See* Nyarady Declaration ¶ 9-10.)

[redacted] (Id.) [redacted] (Id. at ¶¶ 12-13; Nyarady Declaration Exhibit A and B). [redacted] (Id. at ¶ 15).

[redacted] (Western District Case D.I. 108, 134). [redacted]

In addition, as TII knows, [redacted] (*See* Nyarady Declaration ¶ 8.) [redacted]



[redacted]

[redacted] To make this option as feasible as possible, DJI has made the following offers:

- [redacted]
- [redacted]

TII summarily rejected these offers.[3] Importantly, TII's primary stated basis for rejection was a concern tha [redacted]

---

2 [redacted]

3 TII promptly rejected both offers [redacted]

[redacted]

For the reasons set forth below, DJI respectfully asks this Court to enter an order of protection as to the production of the [redacted]

## ARGUMENT

### I. This Court Has the Discretion to Issue a Protective Order

Upon a showing of good cause, a court may in its discretion limit or wholly preclude discovery of a particular matter to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)(If a party demonstrates good cause, "[a] district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained."); *Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 136 (S.D. Tex. 2012); *see also Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 4502615, at *2 (E.D. Tex. Oct. 1, 2021). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *See Thomas Indus. & Mech. Contractors, LLC v. Just.*, No. CV 20-1102, 2021 WL 1564415, at *5 (E.D. La. Apr. 21, 2021).

### II. Production of the Restricted Source Code Would Be an Annoyance, Embarrassment, Oppression, and Undue Burden to DJI Because It Would Inflict Serious and Irreparable Harm to DJI

First, a protective order should be granted because failure to do so would inflict serious and irreparable harm on DJI. [redacted]



Courts have found that [redacted] *See, e.g.*, *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1281 (7th Cir. 1990) (concluding possible Romanian criminal penalties favored barring production where the information sought and the offices of the the party from which production sought were located in Romania and there was "very real threat" to persons who sought to remove the information from Romania); *Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 38 (2d Cir. 1972) (affirming the trial court's refusal to order disclosure of identity of Swiss Bank customers because such disclosure would violate Swiss criminal law and there was, as here, neither "compelling necessity for this information nor potential prejudice to" the party seeking discovery from nondisclosure because there existed available information at least "adequate to enable it to prepare for trial."). In *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, the Federal Circuit stated in a patent case that "[f]ear of

4 When examining cases where there is a conflict between foreign law and domestic discovery requirements courts in other circuits have looked to several factors to determine whether to compel production despite conflict with foreign law. These factors include: "(a) vital national interests of each of the states, (b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person, (c) the extent to which the required conduct is to take place in the territory of the other state, (d) the nationality of the person, and (e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." See *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 329 n.11 (N.D. Tex. 2011). In this case, [redacted] In the Second Circuit, in a case substantially similar to the instant action, the Southern District of New York granted a protective order after running similar conflict of law analysis. See *Doubleline Cap. LP v. Odebrecht Fin.*, Ltd., No. 17CV4576GHWBCM, 2021 WL 4596561, at *14 (S.D.N.Y. Oct. 6, 2021) (granting protective order on the basis of a comity analysis between conflict of laws between U.S FRCP and Brazilian law).

criminal prosecution constitutes a weighty excuse for non-production, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign," and noted that, as is the case here, the code at issue was not strictly necessary for proving infringement: "the ROM code that programs the sending of the signals is not the invention claimed….infringement resides not in the way the claim limitations and functions are translated into computer language, but whether these limitations and functions are performed by the 'accused device"… and [patentee] has not suggested than any necessary information is not available from diagnostic tests of the accused device." 102 F.3d 1224, 1226-32 (Fed. Cir. 1996) (citation omitted).

TII's demand for production is, as it knows, a demand that DJI cannot meet. The Federal Rules do not require a litigant who has acted in good faith to do that which is not possible. *Id.* at 232.

*See S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 339 (N.D. Tex. 2011) (finding that the possibility of criminal, civil and administrative penalties constitute hardship that weighs in favor of not compelling production); *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087 CM SN, 2013 WL 2661037, at *15 (S.D.N.Y. June 12, 2013) ("If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure.").



Courts often look to the good faith efforts of parties to comply with the discovery process when considering whether to issue a protective order. *See In re Terra Int'l, Inc.*, 134 F.3d at 306; *Cochran Consulting*, 102 F.3d 1224 at 1227. Here, in this case in the Eastern District, the record demonstrates good faith efforts: DJI has agreed to [REDACTED] Moreover, DJI has offered two alternatives to [REDACTED]. All of these efforts support DJI's bona fides on this motion.

During the Zoom conference on this issue on May 23, 2023, TII's counsel repeatedly suggested that conduct in the Western District case meant that the source code issue had been resolved for all intents and purposes in this case. (*See* Nyarady Declaration ¶ 11.) That is not so. The source code issue there resulted in sanctions based on conduct alleged in that case. Here, a new case with new counsel and new efforts should allow for a fresh look and different outcome.

### III. TII Has Not Established that the Restricted Source Code Is Relevant or Necessary to Its Case

An additional reason for issuance of a protective order here is that, as noted *supra*, TII has not demonstrated that it cannot prove its case without the code. "Where a party seeking a

protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure . . . is relevant and necessary to its case." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987); *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 801–02 (S.D. Tex. 2010). Here, DJI will produce [REDACTED] TII has an affirmative obligation to explain why the Restricted Source Code is "necessary to its case."

[REDACTED] DJI has provided TII full access to every aspect of the functionality and operations of the accused devices. *First*, as discussed above, TII will have access to [REDACTED] *Second*, TII will have access to the [REDACTED] *Finally*, as of today, TII has received [REDACTED] As part of today's production, DJI notified TII that [REDACTED] (*See* Nyarady Declaration Exhibit E.)

[REDACTED] This level of access to [REDACTED] undoubtedly enables TII to [REDACTED]

and thus understand the full functionality and operational capacity of the accused devices—so as to render the Restricted Source Code of no (or at least minimal) additional value in conducting an infringement analysis.

Therefore, any argument that the small segment of Restricted Source Code is "necessary" for TII to prove its case strains credulity and this Court should reject any such argument.[5]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their motion for a protective order and enter an order relieving DJI from producing the Restricted Source Code

Dated: June 5, 2023

Respectfully Submitted,

*/s/ Andy Tindel*

Catherine Nyarady (*pro hac vice)*
Katherine Forrest (*pro hac vice)*
Kripa Raman (*pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Defendants*

[5] Importantly, TII also may gain access to the Restricted Source Code at a later date

**CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on June 5, 2023. Any other counsel of record will be served via electronic transmission.

*/s/ Andy Tindel*
Andy Tindel