IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TEXTRON INNOVATIONS INC.,<br><br>  Plaintiff,<br><br>v.<br><br>SZ DJI TECHNOLOGY CO., LTD.,<br>DJI EUROPE B.V., SZ DJI BAIWANG<br>TECHNOLOGY CO. LTD., AND IFLIGHT<br>TECHNOLOGY COMPANY LTD.<br><br>  Defendants. | Case No.: 2:22-CV-00351-RWS-RSP<br><br>**REDACTED PUBLIC VERSION** |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
UNDER FED. R. CIV. P. 26(C)**

Plaintiff Textron Innovations Inc. ("TII") has sued Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., iFlight Technology Company Ltd. (collectively, "DJI"), for patent infringement. TII, who is neither a manufacturer nor seller of any drones, has erroneously accused DJI of manufacturing and selling drones that infringe TII's patents. This lawsuit follows a patent suit TII brought against DJI in the Western District of Texas (*Textron* v. *DJI*, 6:21-cv- 00740-ADA) ("Western District Case").

Pursuant to P.R. 3-4(a), DJI is required to produce or make available for inspection today "source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of" the products TII has accused of infringement. DJI will comply with P.R. 3-4(a) to the best of its ability, producing documents, devices and the majority of the source code for the accused products. However, there is a limited amount of source code that DJI cannot legally produce (the "Restricted Source Code"). (*See* Ren Declaration ¶¶ 8-11.)



████████████ But the ██████ GDDOC decision, prohibiting the export of the Restricted Source Code (Nyarady Declaration Exhibits C and D), means that under the Federal Rules, the Restricted Source Code impacted by the export regime that carries such harsh penalties, is not under DJI's "control". *See* Fed. R. Civ. P. 34 ("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [] items in the responding party's possession, custody, or control"); (*see also* Ren Declaration ¶¶ 6-11.). DJI therefore and hereby seeks a protective order ████████████████████

████████████████████████████████████████████████████████. DJI sought consent for this relief from TII and TII has refused. (*See* Nyarady Declaration ¶17.)

Throughout the dialogue on this topic, TII's counsel has improperly relied on the facts and judgments reached in the Western District Case to advance its positions in the instant action. (*See* Nyarady Declaration ¶ 11.) But TII is wrong. This case is not the same as the case brought in the Western District: the patents are different, the facts are different, the proof at trial will be different, counsel for DJI are different, and therefore the judgments reached by this Court should also be different.

In the Western District Case, TII sought and obtained sanctions against DJI relating to production of source code. (Western District Case D.I. 108, 134). TII is positioning this case as a repeat of that one and attempting to position DJI as an unwilling participant in the discovery process governed by the Federal Rules of Civil Procedure. But here, in the Eastern District

litigation, DJI has informed TII that it is willing to produce *all* source code at issue. (*See* Nyarady Declaration ¶ 5.) While quite a significant quantity of such code (indeed the vast majority) can and will be produced (through making it available for inspection) today, June 5, there is a limited amount that cannot be produced (the "Restricted Source Code") because Chinese export regulations, which carry criminal penalties, prevent its production without approval by the GDDOC.[1] (*See* Ren Declaration ¶¶ 10-11.)

## INTRODUCTION

Under Patent Rule 3-4(a) of the Eastern District of Texas, DJI is required to produce source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an accused product. Patent Rule 3–4(a). Consistent with that obligation, and in accordance with this Court's May 11, 2023 Docket Control Order, DJI intends to produce all source code that is within its *full* custody and control on June 5, 2023. (*See* Nyarady Declaration ¶ 5.) Indeed, a very substantial amount of source code relating to the products at issue is being produced today.

DJI, however, does not have control over the Restricted Source Code. (Id.) If DJI were to produce the Restricted Source Code that is subject to export control, it could be subject to severe criminal sanctions. (*See* Ren Declaration ¶¶ 10-11.) During a Zoom conference on May 23, 2023, TII's counsel evinced a clear awareness and understanding of these criminal sanctions. (*See* Nyarady Declaration ¶ 10.) In fact, when told that the export control laws would not

---

1   The Department of Treaty & Law of the Ministry of Commerce ("MOFCOM") of China is the state agency responsible for formulating and enforcing government policy on foreign trade and commerce. The Department of Commerce of Guangdong Province ("GDDOC"), the provincial level government agency, and the Department of Science and Technology of Guangdong Province are responsible for conducting a trade and technology review ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Ren Declaration ¶¶ 1, 5, 14.)

3

prevent a Chinese National working for TII to review the segment of code on Chinese soil in order to determine if it was even relevant (and therefore worth fighting about), TII's counsel refused on the basis that even a review would be too risky given the Chinese criminal penalties. (*See* Nyarady Declaration ¶ 9-10.)

The Restricted Source Code is located in China and subject to export restrictions–the parties do not dispute these facts. DJI's headquarters are in China and its source code (among other products) resident there is subject to China's export control law. (*See* Ren Declaration ¶ 8.) These laws contain a variety of provisions governing all aspects of when and how various technologies, including source code software, can be removed from Chinese soil. (Id. at ¶¶ 6-9.) Approval by GDDOC is required for any and all exports of such restricted technologies. (Id.) DJI has complied with GDDOC, as it must, at various times in connection with the export of its technologies from Chinese soil. (Id.)

Accordingly, the Restricted Source Code cannot be exported without the express approval and consent of the Chinese authorities. (Id. at ¶ 15).

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the source code dispute in the instant action from the dispute in the Western District Case. There, a substantial part of the source code dispute and subsequent briefing concerned whether a timely application was filed to the Chinese authorities by DJI. (Western District Case D.I. 108, 134). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, this is simply not an issue.

In addition, as TII knows, the Restricted Source Code is available to be reviewed *today or any day* by a Chinese National on Chinese soil. (*See* Nyarady Declaration ¶ 8.) The Chinese

4

████████████████████████████████████████████████████
████████████████████

National can be, for instance, an expert or consultant retained by TII and can otherwise reside in the United States (for example, a professor at a university). Such an individual can review the code immediately. While that individual cannot remove notes or other copies of the segment of restricted code from Chinese soil given the restrictions on the source code, he or she will be able to give an indication of whether the code is relevant to or required for proving TII's claims. To make this option as feasible as possible, DJI has made the following offers:

- ████████████████████████████████████████████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████

TII summarily rejected these offers.[3] Importantly, TII's primary stated basis for rejection was a concern that the Chinese national would be at risk of criminal detention on Chinese soil if he or she attempted to access the code, simply reinforcing the seriousness with which both parties accept the legal requirements against exporting the Restricted Source Code. (*See* Nyarady Declaration ¶¶ 9-10.)

---

2   Given TII's fear of criminal penalties from China under this approach, ██████████████████████████████████████████████████████████████████████████████████████████

3   TII promptly rejected both offers. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

For the reasons set forth below, DJI respectfully asks this Court to enter an order of protection as to the production of the Restricted Source Code under Rule 26(c) to prevent undue burden and oppression to DJI, which stands to otherwise suffer a clearly defined and serious injury .

## ARGUMENT

### I. This Court Has the Discretion to Issue a Protective Order

Upon a showing of good cause, a court may in its discretion limit or wholly preclude discovery of a particular matter to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)(If a party demonstrates good cause, "[a] district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained."); *Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 136 (S.D. Tex. 2012); *see also Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 4502615, at *2 (E.D. Tex. Oct. 1, 2021). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *See Thomas Indus. & Mech. Contractors, LLC v. Just.*, No. CV 20-1102, 2021 WL 1564415, at *5 (E.D. La. Apr. 21, 2021).

### II. Production of the Restricted Source Code Would Be an Annoyance, Embarrassment, Oppression, and Undue Burden to DJI Because It Would Inflict Serious and Irreparable Harm to DJI

First, a protective order should be granted because failure to do so would inflict serious and irreparable harm on DJI. Here, disclosure of the Restricted Source Code would almost certainly lead to serious criminal sanctions against DJI. (*See* Ren Declaration ¶¶ 10-11.)

Courts have found that the violation of foreign law and the likelihood of criminal prosecution that follows constitute sufficient reason to bar the disclosure of otherwise discoverable material.[4] *See, e.g.*, *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1281 (7th Cir. 1990) (concluding possible Romanian criminal penalties favored barring production where the information sought and the offices of the the party from which production sought were located in Romania and there was "very real threat" to persons who sought to remove the information from Romania); *Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 38 (2d Cir. 1972) (affirming the trial court's refusal to order disclosure of identity of Swiss Bank customers because such disclosure would violate Swiss criminal law and there was, as here, neither "compelling necessity for this information nor potential prejudice to" the party seeking discovery from nondisclosure because there existed available information at least "adequate to enable it to prepare for trial."). In *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, the Federal Circuit stated in a patent case that "[f]ear of

---

4  When examining cases where there is a conflict between foreign law and domestic discovery requirements courts in other circuits have looked to several factors to determine whether to compel production despite conflict with foreign law. These factors include: "(a) vital national interests of each of the states, (b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person, (c) the extent to which the required conduct is to take place in the territory of the other state, (d) the nationality of the person, and (e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." See *S.E.C. v. Stanford Int'l Bank, Ltd.,* 776 F. Supp. 2d 323, 329 n.11 (N.D. Tex. 2011).  In this case, any violation of Chinese law would occur on Chinese soil where the source code was developed and would lead to severe criminal sanctions as discussed herein.  Therefore, even in consideration of the conflict of law analysis, this Court should yield to the strict restrictions imposed by Chinese law regarding the Restricted Source Code.  In the Second Circuit, in a case substantially similar to the instant action, the Southern District of New York  granted a protective order after running similar conflict of law analysis. See *Doubleline Cap. LP v. Odebrecht Fin.*, Ltd., No. 17CV4576GHWBCM, 2021 WL 4596561, at *14 (S.D.N.Y. Oct. 6, 2021) (granting protective order on the basis of a comity analysis between conflict of laws between U.S FRCP and Brazilian law).

7

criminal prosecution constitutes a weighty excuse for non-production, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign," and noted that, as is the case here, the code at issue was not strictly necessary for proving infringement: "the ROM code that programs the sending of the signals is not the invention claimed….infringement resides not in the way the claim limitations and functions are translated into computer language, but whether these limitations and functions are performed by the 'accused device"… and [patentee] has not suggested than any necessary information is not available from diagnostic tests of the accused device." 102 F.3d 1224, 1226-32 (Fed. Cir. 1996) (citation omitted).

TII's demand for production is, as it knows, a demand that DJI cannot meet. The Federal Rules do not require a litigant who has acted in good faith to do that which is not possible. *Id.* at 232. TII has stated that it does not want to touch the Restricted Source Code unless production can occur under a process that protects any exposed individuals from criminal penalties, and also knows that DJI is not in control of that outcome.

Moreover, these criminal penalties and administrative sanctions, which would result from producing the Restricted Source Code, will cause severe hardship not only for DJI but potentially also for Plaintiff and third parties. *See S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 339 (N.D. Tex. 2011) (finding that the possibility of criminal, civil and administrative penalties constitute hardship that weighs in favor of not compelling production); *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087 CM SN, 2013 WL 2661037, at *15 (S.D.N.Y. June 12, 2013) ("If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure.").

██████████████████████████████████████████████
███████████████

These administrative and criminal penalties would almost certainly be inflicted on DJI but could also extend to others in possession of the Restricted Source Code, particularly those that are in possession of, work with, discuss, or use the underlying source code in any way. In short, the production of the Restricted Source Code under current circumstances could potentially expose all parties involved in the case to criminal liability and administrative sanctions under foreign law.

Courts often look to the good faith efforts of parties to comply with the discovery process when considering whether to issue a protective order. *See In re Terra Int'l, Inc.*, 134 F.3d at 306; *Cochran Consulting,* 102 F.3d 1224 at 1227. Here, in this case in the Eastern District, the record demonstrates good faith efforts: DJI has agreed to produce substantial code, including all segments of flight control source code not under export restrictions. ███████████████ ██████████████████████████████████████████████ Moreover, DJI has offered two alternatives to allow Chinese nationals to review the segment of source code under export control, in China, to make a threshold determination as to relevance. All of these efforts support DJI's bona fides on this motion.

During the Zoom conference on this issue on May 23, 2023, TII's counsel repeatedly suggested that conduct in the Western District case meant that the source code issue had been resolved for all intents and purposes in this case. (*See* Nyarady Declaration ¶ 11.) That is not so. The source code issue there resulted in sanctions based on conduct alleged in that case. Here, a new case with new counsel and new efforts should allow for a fresh look and different outcome.

### III. TII Has Not Established that the Restricted Source Code Is Relevant or Necessary to Its Case

An additional reason for issuance of a protective order here is that, as noted *supra*, TII has not demonstrated that it cannot prove its case without the code. "Where a party seeking a

████████████████████████████████████████
                    ████████████

protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure . . . is relevant and necessary to its case." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987); *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 801–02 (S.D. Tex. 2010). Here, DJI will produce almost all of the source code that TII has requested for the accused products. Therefore, the total source code that is currently being withheld from TII (due to Chinese export laws) relative to the source code that will be provided to TII is insubstantial. And due to the severe harm that the exportation of the Restricted Source Code could have on DJI and others, TII has an affirmative obligation to explain why the Restricted Source Code is "necessary to its case."

████████████████████████████████████████████████████████████, DJI has provided TII full access to every aspect of the functionality and operations of the accused devices. *First*, as discussed above, TII will have access to nearly every piece of relevant source code, including: ████████████████████████████████████████████

████████████████████████████████████████ (the Restricted Source Code represents only a small segment of code). (*See* Nyarady Declaration, Exhibit E.) *Second,* TII will have access to the relevant schematics and design documents, which will explain the parts of the accused device. *Finally*, as of today, TII has received physical access to the majority of the accused devices. As part of today's production, DJI notified TII that the majority of the accused devices are now available at DJI's Los Angeles office for inspection. (*See* Nyarady Declaration Exhibit E.)

TII will be permitted to fully examine the devices and run the relevant flight tests and data analytics. This level of access to the accused devices undoubtedly enables TII to evaluate,

10

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ test and thus understand the full functionality and operational capacity of the accused devices—so as to render the Restricted Source Code of no (or at least minimal) additional value in conducting an infringement analysis.

Therefore, any argument that the small segment of Restricted Source Code is "necessary" for TII to prove its case strains credulity and this Court should reject any such argument.[5]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their motion for a protective order and enter an order relieving DJI from producing the Restricted Source Code ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

Dated: June 5, 2023

                                        Respectfully Submitted,

                                        */s/ Andy Tindel*
                                        Catherine Nyarady (*pro hac vice*)
                                        Katherine Forrest (*pro hac vice*)
                                        Kripa Raman (*pro hac vice*)
                                        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                        1285 Avenue of the Americas
                                        New York, NY 10019

                                        *Attorneys for Defendants*

---

[5] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

**CERTIFICATE OF SERVICE**

      This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on June 5, 2023. Any other counsel of record will be served via electronic transmission.

                                          */s/ Andy Tindel*
                                          Andy Tindel